## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                        Case No. 13-cr-2051 KWR

JAMES OLSSON,

     Defendant.

### MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Defendant's counseled Motion for Compassionate Release from Custody (**Doc. 42**). Defendant seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). He alleges the COVID-19 pandemic and his underlying conditions are extraordinary and compelling reasons to release him now. Having carefully reviewed the record and applicable law, the Court will deny the Motion.

### BACKGROUND

On December 2, 2013, Defendant pled guilty to two counts of possession of a matter containing visual depictions of minors engaged in sexually explicit conduct. **(Docs. 29, 30).** On March 12, 2014, the Court sentenced him to 120 months imprisonment, followed by a life term of supervised release. **(Docs. 34, 35).** This was the sentence recommended in the plea agreement and the minimum sentence available. **Doc. 29 at 2; PSR at 14 ¶ 70**. Defendant is currently held at the Fort Worth Federal Medical Center and his current release date is April 4, 2023. *See* https://www.bop.gov/inmateloc/ (last accessed November 20, 2020).

On July 18, 2020, Defendant filed a counseled motion seeking compassionate release due to COVID-19. **Doc. 42.** Defendant filed the motion for compassionate release pursuant to 18

U.S.C. § 3582(c)(1)(A)(i).  He asserts he is at significant risk of contracting and developing severe complications from COVID-19 because he is 67 years old and suffers from chronic kidney disease, heart failure, type 2 diabetes, high blood pressure, and liver disease.  **Doc. 42 at 10-11.** The sentencing judge recommended that Defendant be designated to a federal medical center to take care of his medical needs.  **Doc. 35 at 3.**

Defendant's motion to appoint counsel (**Doc. 52**) was granted (**Doc. 53**) and Defendant filed a counseled motion for compassionate release.  If released, Defendant would seek entry into a Veteran's Administration residential center.  **Doc. 54.**

## DISCUSSION

### I.    Defendant failed to fully administratively exhaust.

Prior to the passage of the First Step Act, only the Director of the Bureau of Prisons (BOP) could seek compassionate release under 18 U.S.C. § 3582(c).  The First Step Act modified 18 U.S.C. § 3582(c)(1)(A) with the intent of "increasing the use and transparency of compassionate release."  Pub. L. No. 115-391, 132 Stat. 5194, at 5239.  Section 603(b) of the First Step Act now provides that a sentencing court may modify a sentence either upon (1) a motion of the Director of the BOP (2) "or upon motion of the defendant after he has exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on his behalf or (3) the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility … ."  18 U.S.C. § 3582(c)(1)(A).

As to the third alternative, "a 'lapse' refers to the failure of the warden to respond to defendant's request." *United States v. Lee*, No. CR 10-20128-01-KHV, 2020 WL 5993505, at *2 (D. Kan. Oct. 9, 2020), *citing United States v. Abdeljawad*, No. 15-CR-3394 WJ, 2020 WL

4016051, at *2 (D.N.M. July 16, 2020) (in context, "lapse of 30 days" refers to complete absence of response during that period); *United States v. Saenz*, No. 97CR2106-JLS, 2020 WL 2767558, at *2 (S.D. Cal. May 28, 2020) (no "lapse" occurred because warden acted on defendant's request); *United States v. Mille*r, 2020 WL 113349, at *2 (D. Idaho Jan. 8, 2020) ("lapse" means warden must fail to act on request for period of 30 days).  In other words, if the warden responds to a request within 30 days, defendant must fully exhaust available administrative appeals before filing a motion in district court. See *United States v. Valenzuela*, No. 15-CR-01460-WJ, 2020 WL 5439803, at *2 (D.N.M. Sept. 10, 2020) (court lacks jurisdiction until inmate appeals warden denial through administrative appeal process and receives final agency determination); *United States v. Van Sickle*, No. CR18-0250JLR, 2020 WL 3962225, at *3 (W.D. Wash. July 13, 2020) (despite urgency created by COVID-19, defendant must exhaust administrative remedies within BOP before filing motion in court).

Defendant asserts he satisfied the exhaustion requirement because he filed a request for compassionate release in May 2020 and did not receive a response from the warden within 30 days. **Doc. 42 Ex. A**.  The record reflects that Defendant made a request which was denied by the warden within thirty days.  He filed *another* request to the warden clarify that denial.  When he did not receive a second response by the warden within thirty days, he filed this motion.  It is unclear why Defendant did not appeal his initial denial by the warden.  "To effectively exhaust under § 3582, a prisoner must make an initial request for compassionate release under 28 C.F.R. § 571.61, and then must appeal a denial pursuant to § 571.63(a) (inmate "may appeal the denial" of a request for compassionate release). *United States v. Abdeljawad,* No. 15-CR-3394 WJ, 2020 WL 4016051, at *1 (D.N.M. July 16, 2020), *citing*  § 3582(c)(1)(A); *see also* 28 C.F.R. § 571.60–

571.64 (Procedures for the Implementation of 18 U.S.C. § 3582(c)(1)(a)). "Only a denial by the BOP Director is considered a 'final administrative decision.'" *Id.*, *citing* § 571.63(c).

Because Defendant received an answer within thirty days by the warden, the Court finds that he must "fully exhaust[] all administrative rights to appeal." § 3582(c)(2)(A). Because he failed to do so here, the Court is precluded from granting his request for release.

## II.     **Defendant's compassionate release motion otherwise fails on the merits.**

Alternatively, even if Defendant fully administratively exhausted his compassionate release request, his motion fails on the merits. Compassionate release is available where the sentence reduction is supported by: (1) "extraordinary and compelling reasons;" (2) "applicable policy statements issued by the Sentencing Commission[;]" and (3) "the factors set forth in [18 U.S.C. §] 3553(a)." 18 U.S.C. § 3582(c)(1)(A)(i).

As to the first requirement, Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for a sentence reduction, including … a list of specific examples." 28 U.S.C. § 994(t). *See also United States v. Saldana,* 2020 WL 1486892, at *2 (10th Cir.) (looking to Sentencing Commission factors to define extraordinary and compelling reasons for release). The Sentencing Commission has listed four categories of extraordinary and compelling reasons: "(A) Medical Condition of the Defendant," "(B) Age of the Defendant," "(C) Family Circumstances," and "(D) Other Reasons." U.S.S.G. § 1B1.13, cmt. n.1. The Application Notes to U.S.S.G. § 1B1.13 describe two categories of extraordinary medical impairments. The first category applies to prisoners 65 or older who have served at least 10 years (or 75%) of their sentence and are experiencing "serious deterioration … because of the aging process." U.S.S.G. § 1B1.13, app. note. The second category applies to any

prisoner "suffering from a terminal illness" or "a serious … medical condition that substantially diminishes the ability … to provide self-care within the environment of the correctional facility." *Id.*

Whether the pandemic fits within U.S.S.G. § 1B1.13, or constitutes a distinct circumstance, many courts have found "extraordinary and compelling reasons" for release based on underlying health conditions and COVID-19.  *See United States v. McCarthy*, 2020 WL 1698732, at *5 (D. Conn.) (collecting cases involving asthma, diabetes, and compromised immune systems); *United States v. Jenkins*, 2020 WL 2466911, at *6 (D. Colo.) (releasing inmate based on age and stroke risk); *United States v. Lopez*, 2020 WL 2489746, at *3 (D.N.M.) (analyzing release based on age, blood pressure, and diabetes).  However, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also United States v. Nwankwo,* 2020 WL 2490044, at *1 (S.D.N.Y.) (collecting cases for the proposition "that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional [risk] factors").  Assuming COVID-19 can constitute a basis for compassionate release, the Court will not find "extraordinary and compelling circumstances" based on generalized COVID-19 fears and speculation.  *United States v. Heywood*, No. CR 17-2240 JAP, 2020 WL 4904050, at *2 (D.N.M. Aug. 19, 2020).

Here, Defendant contends his age and multiple underlying conditions (chronic kidney disease, heart failure and other heart issues, diabetes and hypertension) place him at a greater risk for complications from COVID-19.  The Center for Disease Control (CDC) states that these

5

conditions increase his risk of complications and death from COVID-19. *See https://www.cdc.gov/coronavirus/2019-ncov/.*

However, Defendant's motion does not discuss the specific circumstances in FMC Fort Worth, including the spread of COVID-19 in the facility, the conditions at the facility, and the precautions the facility is taking. The record does not reflect what specific, personal risk Defendant faces at FMC Fort Worth. Rather, Defendant discusses generalized concerns about COVID-19 and the BOP generally. As of November 20, 2020, FMC Fort Worth has six active cases among inmates, and 16 active cases among staff. *See* https://www.bop.gov/coronavirus/. Therefore, the Court concludes the risk facing Defendant is merely generalized and speculative, and there is not an extraordinary or compelling reason warranting a reduction in his sentence.

Alternatively, even if Defendant satisfies the first prong of the test, he must demonstrate he (1) is not a danger to the community and (2) that the Section 3553(a) factors favor release. *See United States v. Carter*, 2020 WL 3051357, at *3 (S.D.N.Y.) (Section 3553(a) factors did not justify early release despite extraordinary and compelling reasons); *Easter v. United States*, 2020 WL 3315993, at *4 (E.D. Va.) (same); *United States v. Sears*, 2020 WL 3250717, at *2 (D.D.C.) (denying motion based on Section 3553(a) factors, despite petitioner's diabetes and hypertension). The community safety analysis focuses on the nature of the offense, the history and characteristics of the defendant, and the nature of the danger. U.S.S.G. § 1B1.13(2). (incorporating the 18 U.S.C. § 3142(g) factors). It also considers the danger to the community by a defendant continuing to commit crimes. Section 3553(a) incorporates some of these factors and also focuses on deterrence, the guideline range, and the need to avoid unwarranted sentence disparities among similar offenders. 18 U.S.C. § 3553(a)(1)-(7).

The Court must determine that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."   USSG § 1B1.13(2). This includes the risk that Defendant would continue to commit crimes.  Here, the § 3142(g) factors weigh toward finding he is a danger to the community.  In 2005, Defendant was convicted in New Mexico state court of "Distribution of Visual Medium of Sexual Exploitation of Children under 18 years of age." **PSR at 9.**  On January 3, 2013 Defendant was convicted of failing to register as a sex offender.   **PSR at 10.**   While on probation for failing to register as a sex offender, his probation officer discovered the child pornography in this case, including multiple videos and pictures of prepubescent children engaging in sexual acts.  *See* **PSR at 3-6; Doc. 29 (plea agreement) at 3-5**.  Defendant was convicted in this case of two counts of possession of matter containing visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. §§ 2252(a)(4)(B), 2252(B)(2), and 2256.   Therefore, he committed the instant offense while on probation.  Defendant alleges that after a heart attack while in custody, he no longer desires to look at child pornography.  The Court does not find this credible, as Defendant already had substantial health issues before he was sentenced in this case. Based on his history as described above and in the undisputed PSR, the Court finds that conditions of supervision cannot be crafted to reasonably assure the community's safety.  Weighing these facts, the Court cannot conclude that Defendant is not a danger to the community because of the repeated nature of the crime, the prior violations of probation, and prior failure to register as a sex offender.

Alternatively, after evaluating all § 3553(a)(1)-(7) factors and the record, the Court declines to grant compassionate release in this case.  Defendant committed a serious crime - possession of child pornography depicting sexual acts involving or between prepubescent

children.  § 3553 (a)(1).  He possessed over 600 files of child pornography, including videos depicting sexual acts involving prepubescent children, some as young as seven years old.  The possession of child pornography in this case caused lifelong harm to the child victims depicted in the images and videos.  *See* **Doc. 48** (victim impact statements).  Defendant's offense was serious, and "it inflicted considerable harm upon his victims."  *United States v. Sample*, 901 F.3d 1196, 1200 (10th Cir. 2018) (considering harm as part of the § 3553(a) analysis); *see also United States v. Walker,* 844 F.3d 1253, 1256 (10th Cir. 2017) ("[T]he length of the sentence should reflect the harm done").  He committed this crime while on probation for failing to register as a sex offender, and he was previously convicted of possessing child pornography.  As explained above, Defendant poses a danger to the community and releasing him would not protect the public from further crimes of the defendant.  § 3553(a)(2)(C). The Court notes that Defendant is 67 and appears to have serious medical conditions which place him at greater risk if he contracted COVID-19.  *Id.*

As noted above, Defendant appears to have received the statutory minimum sentence. Reducing his sentence would not further "the need to avoid unwarranted sentence disparities among defendants with similar records…"  § 3553(a)(6).  It would also not reflect the seriousness of the offense, promote respect for the law, or provide just punishment for the offense.  Reducing his sentence would not further the need for deterrence or protect the public from further crimes, and would likely instead increase sentencing disparities.  § 3553(a)(2)(A)-(D).  Therefore, considering the § 3553(a)(1)-(7) factors, the Court declines to release Defendant or reduce his sentence.

Accordingly, the Court will the deny the Motion.

8

**IT IS THEREFORE ORDERED** that Defendant's Motion for Compassionate Release **(Doc. 42)** is **DENIED**.

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE